```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


JERONNA HANSBERRY,                 )
                                   )
        Plaintiff,                 )
                                   )
                                   )
                                   )
    v.                             )  No. 22 C 3388
                                   )
                                   )
BOARD OF EDUCATION OF THE CITY     )
OF CHICAGO, et al.                 )
                                   )
        Defendants.                )
```

<u>Memorandum Opinion and Order</u>

Plaintiff Jeronna Hansberry sought employment with two Chicago Charter Schools, North Lawndale and ASPIRA, in 2020 and 2021, respectively. According to her complaint, these schools contract with the Board of Education of the City of Chicago to conduct background checks on prospective employees. In conjunction with her job application, and after receiving conditional offers of employment, Ms. Hansberry was required to sign a three-page form captioned, "Release and Consent to Conduct and Disclose Background Investigation and Personnel Information" ("Authorization Form").[1] Ms. Hansberry completed and

---

[1] The two signed forms are attached as Exhibits 3 and 4 to the Board of Education's motion to dismiss. Plaintiff does not contest the authenticity of these documents, and they are central to her claims, so I may consider them without converting

signed Authorization Forms on 06/29/2020 and 07/30/2021. *Id*. Thereafter, the Board of Education investigated Ms. Hansberry's background and sent reports of its findings to North Lawndale and ASPIRA. After receiving the Board's report, North Lawndale terminated plaintiff's employment.[2] This action followed.

In her complaint, Ms. Hansberry claims that the Charter School defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(A), by failing to provide a "stand-alone disclosure" informing her that a consumer report may be obtained for employment purposes. The complaint also claims that the Board violated § 1681b(b)(1)(A) of the Act by failing to obtain certifications from the Charter Schools certifying that they provided the required disclosures and would comply with the additional requirements of § 1681b(b)(3)(A) (concerning the use of consumer reports for adverse actions).

Defendants seek dismissal of these claims on the ground that plaintiff lacks Article III standing. They are correct for the reasons I explain below. Additionally, to the extent Ms. Hansberry argues that *Robertson v. Allied Sols., LLC*, 902 F.3d 690 (7th Cir. 2018), supports standing, I agree with defendants

---

defendants' motions to summary judgment motions. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).
[2] Although it does not alter my analysis, I note that although plaintiff alleges that she was "terminated," it does not appear from the complaint that she was ever employed by either of the Charter Schools, only that she received from them a conditional offer of employment.

that her complaint does not plead—nor do her allegations support—the only claim as to which the *Robertson* court concluded that the requirements for standing were satisfied.

The Authorization Forms Ms. Hansberry signed open with the following text:

> This form gives the Board of Education of the City of Chicago ("Board") authorization to conduct a Background Investigation which may include, but is not limited to, a Fingerprint-based Criminal History Records Check and an Illinois Department of Children and Family Services State Automated Child Welfare Information System check (collectively "Background Investigation"). This form also gives the Board authorization to release all information or documentation regarding any disciplinary or dismissal actions taken against you during your employment by the Board and your current eligibility for rehire by the Board and, if ineligible for rehire, the reasons therefor (collectively "Personnel Information").

Board's Mot., Exhs. 3, 4, ECF 19-3, 19-4. The remainder of the page contains two text boxes with fillable fields: the first identifies the charter school requesting the background check and is signed by a school official; the second identifies the applicant by name, address, date of birth, and other personal information and is signed by the applicant. *Id*.

The second and third pages of the Authorization Forms contain additional questions about the applicant's background and further disclosures. The final section of the form is captioned, "AUTHORIZATION TO DISCLOSE RESULTS OF BACKGROUND

3

INVESTIGATION AND PERSONNEL INFORMATION TO THE CHARTER SCHOOL."

It states:

> I, the undersigned hereby authorize the release of any criminal history record information that may exist regarding me from any agency, organization, institution, or entity having such information on file.... I further understand that I have the right to challenge any information disseminated from these criminal justice agencies regarding me that may be inaccurate or incomplete pursuant to Title 28 Code of Federal Regulation 16.34 and or Chapter 20 ILCS 2630/7 of the Criminal Identification Act.
>
> I, the undersigned, provide this authorization to the Board, in connection with my application to work or my continuing to work with the Charter School. I also authorize the Board to release and disclose the results of the Background Investigation and Personnel Information to the Charter School. I understand that the purpose of this authorization is to enable the Charter School to make a complete assessment of my fitness to work with the Charter School.
>
> I, the undersigned...authorize and enable the Board to perform a background investigation, which may include but is not limited to a Fingerprint-based Criminal History Records Check; ... [I] understand and agree that the information obtained through the Background Investigation and Personnel Information check will be used to determine whether employment by the Charter School will be offered or continued or whether volunteer or compensated service will be approved[.]

*Id*.

Ms. Hansberry does not dispute that she signed the Authorization Forms attached to the Board's motion to dismiss. Nor does she claim that the Charter Schools failed to inform her that a background check would be conducted in conjunction with her application for employment, or that she did not understand

4

their disclosures in that connection. Instead, she claims to have been injured by the Charter Schools' failure to disclose the information "in a document that consists solely of the disclosure," as the statute requires. This claim—a "notice" claim in Seventh Circuit parlance—is foreclosed by *Groshek v. Time Warner Cable, Inc.,* 865 F.3d 884, (7th Cir. 2017). *See Robertson*, 902 F.3d at 693-694.

In *Groshek*, the Seventh Circuit considered a notice claim like the one Ms. Hansberry alleges and concluded that the injury the plaintiff asserted was not sufficiently concrete to support Article III jurisdiction. *Id*. at 889. As the court explained, the FCRA's stand-alone disclosure requirement is "designed to decrease the risk of a job applicant unknowingly providing consent to the dissemination of his or her private information," while its related "authorization requirement further protects consumer privacy by providing the job applicant the ability to prevent a prospective employer from procuring a consumer report, i.e., by withholding consent," *id*. at 887. Reviewing the complaint before it, the court observed:

> Groshek did not allege that Appellees failed to provide him with a disclosure that informed him that a consumer report may be obtained for employment purposes. His complaint contained no allegation that any of the additional information caused him to not understand the consent he was giving; no allegation that he would not have provided consent but for the extraneous information on the form; no allegation that additional information caused him to be confused; and,

5

> no allegation that he was unaware that a consumer report would be procured. Instead, he simply alleged that Appellees' disclosure form contained extraneous information. We conclude that Groshek has alleged a statutory violation completely removed from any concrete harm or appreciable risk of harm.

*Id.* at 889. The same result obtains on the materially identical allegations of the complaint here.

That Ms. Hansberry characterizes the harms she suffered as "informational" and "privacy" injuries does not change the analysis. The *Groshek* plaintiff characterized his claims similarly. With respect to the "informational injury," the court noted that the plaintiff (like Ms. Hansberry) did not claim to have been denied any information; he merely objected to the form in which it was provided. *Id.* at 888. The court went on to observe that the FCRA was enacted not to protect consumers from non-compliant disclosures but "to decrease the risk that a job applicant would unknowingly consent to allowing a prospective employer to procure a consumer report." *Id.* at 888. Because the plaintiff did not suggest that the disclosure at issue caused him unknowingly to consent to a background check, the court concluded that the informational injury he asserted was insufficient to support Article III jurisdiction. As for the plaintiff's alleged privacy injury, the court acknowledged that the FCRA's authorization requirement implicates a privacy interest but held that the bare procedural violation the

plaintiff alleged did not articulate a concrete privacy injury. *Id.* at 889 ("[b]ecause Groshek admits that he signed the disclosure and authorization form, he cannot maintain that he suffered a concrete privacy injury."). The facts here lead inexorably to the same conclusions. Ms. Hansberry's claim against the Board of Education—that it failed to obtain certifications from the Charter Schools concerning their compliance with the FCRA's disclosure requirements—is even more removed from any concrete injury with which the statute is concerned.

Nor does Ms. Hansberry's citation to *Robertson v. Allied Sols., LLC*, 902 F.3d 690 (7th Cir. 2018), salvage her claims. To begin, the *Robertson* court noted that the plaintiff's notice claim was "functionally indistinguishable" from the one it concluded in *Groshek* did not support standing, and, indeed, the plaintiff did not appeal the dismissal of that claim. The only claim as to which *Robertson* concluded the plaintiff had standing was an "adverse-action" claim pursuant to § 1681b(b)(3)(A). Ms. Hansberry's complaint does not assert such a claim. Moreover, her allegation that defendant Lawndale terminated her "without giving her a notice of an adverse action and a summary of her rights," Compl., ECF 1, at ¶ 30, does not suffice to confer standing on the facts alleged here. *Robertson* held that an "informational injury is concrete if the plaintiff establishes

7

that concealing information impaired her ability to use it for a substantive purpose that the statute envisioned." 902 F.3d 694. The "substantive interest" at issue with respect to Lawndale's disclosure obligation is to "allow the consumer to review the reason for any adverse decision and to respond." *Id*. at 696. But Ms. Hansberry does not complain that she was injured because she was deprived of the ability to review Lawndale's reason for its adverse action. She claims to have been injured because Lawndale failed to provide a stand-alone disclosure of her statutory rights. *See* Resp., ECF 33 at 6. That is not the type of harm the FCRA was designed to prevent.

For the foregoing reasons, defendants' motions to dismiss are granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: April 26, 2023